IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAMINE NIXON, | : | CIVIL ACTION |
| | : | NO. 14-4322 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J. June 7, 2016

Chamine Nixon ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision of Carolyn W. Colvin ("Commissioner" or "Defendant") – acting Commissioner of the Social Security Administration ("SSA") – denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the administrative record, submitted pleadings, Magistrate Judge Thomas J. Rueter's Report and Recommendation ("R&R"), and Plaintiff's Objections thereto, the Court will remand for

additional explanation concerning, or reconsideration of, portions of Defendant's decision.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

On September 13, 2010, Plaintiff filed an application for DIB and SSI, alleging that she became disabled on September 1, 2008. R. 197-203. According to Plaintiff and various doctors, Plaintiff suffers from multiple ailments, including sleep apnea, R. 15; obesity, R. 16; chronic pain, R. 19; and a number of mental health issues, R. 19. Plaintiff, who was in her early 30s when she filed for benefits, last worked as a cashier in a supermarket and stopped working after being injured in a slip and fall accident in 2009. R. 35-37, 44. After the accident, Plaintiff attempted to get her supermarket job back, but was not rehired because she could not perform the job duties. R. 37. Since then, she has made several other attempts to work, but has been unable to hold a job due to her chronic pain. R. 43.

An administrative law judge ("ALJ") held a hearing on Plaintiff's claim on September 25, 2012. R. 30. Plaintiff and a vocational expert ("VE") testified. R. 31. On November 20, 2012, the ALJ issued an unfavorable decision, finding that Plaintiff is not disabled for the purposes of the Social Security Act. R.

[1] Citations to "R." are citations to the administrative record, which is located on the docket at ECF number 6.

13-24. Plaintiff sought review by the Appeals Council, which denied her request R. 1-3.

Plaintiff commenced the present action on July 17, 2014, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 12, 2015, Magistrate Judge Thomas J. Rueter entered a Report and Recommendation, recommending that Plaintiff's request for review be denied and judgment be entered in favor of Defendant. ECF No. 13. Plaintiff filed an Objection, ECF No. 14, and the matter is now ripe for disposition.

## II. STANDARD OF REVIEW

The Court undertakes a de novo review of the portions of the R&R to which the plaintiff has objected. See 28 U.S.C. § 636(b)(1); Cont'l Cas. Co. v. Dominick D'Andrea, Inc., 150 F.3d 245, 250 (3d Cir. 1998). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

In reviewing the Commissioner's final determination that a person is not disabled and, therefore, not entitled to Social Security benefits, the Court may not independently weigh the evidence or substitute its own conclusions for those reached by the ALJ. See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Instead, the Court must review the factual findings

presented to determine whether they are supported by substantial evidence. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence constitutes that which a "reasonable mind might accept as adequate to support a conclusion." Rutherford, 399 F.3d at 552 (internal quotation marks omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" Id. (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the ALJ's decision is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

An ALJ uses a five-step inquiry to determine if a plaintiff is entitled to SSI benefits. Basically, a plaintiff must establish that (1) she is not engaged in any "substantial gainful activity," and (2) she suffers from a severe impairment. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (citing Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987)). If the plaintiff satisfies these two elements, the Commissioner determines (3) whether the impairment is as severe as the impairments listed in 20 C.F.R. pt. 404, Subpt. P, App. 1, which creates a presumption of disability. Id.

If the plaintiff's medical impairment is not "listed," the plaintiff must prove that (4) "the impairment nonetheless prevents her from performing work that she has performed in the past." Id. The relevant inquiry is whether the plaintiff "retains the residual functional capacity to perform her past relevant work." Fargnoli v. Massanari, 247 F.3d 34, 39 (3d Cir. 2001). If the plaintiff proves she does not, the Commissioner must grant her benefits unless the Commissioner can demonstrate (5) that considering the plaintiff's residual functional capacity ("RFC"), age, education, and work experience, there are jobs available in significant numbers in the national economy that the plaintiff can perform. Jesurum, 48 F.3d at 117 (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)).

## III. THE ALJ'S DECISION

Using the five-step inquiry described above, the ALJ determined that Plaintiff is not disabled.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since she applied for benefits. R. 15.

At step two, the ALJ found that Plaintiff suffers from the following severe impairments: depressive disorder and obesity. R. 15.

At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1. R. 16.

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light, simple work in a low-stress environment with limited contact with the public and coworkers. R. 18. The ALJ further found that Plaintiff is unable to perform any past relevant work. R. 22-23.

At step five, relying on the testimony of the VE, the ALJ found that there are jobs available in significant numbers in the national economy that claimant can perform. R. 23. Such jobs include assembler, inspector, and packer. R. 24. The ALJ thus found that Plaintiff is not entitled to the requested benefits. R. 24.

**IV. DISCUSSION**

Plaintiff brings only one issue for review by the Court: whether the ALJ erred by failing to discuss Plaintiff's Global Assessment of Functioning ("GAF") score of 45.

"A GAF score is a 'numerical summary of a clinician's judgment of [an] individual's overall level of functioning . . . .'" Rivera v. Astrue, 9 F. Supp. 3d 495, 504 (E.D. Pa. 2014) (quoting American Psychiatric Association:

Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) [hereinafter DSM-IV]). The GAF scale is "used by mental health professionals to 'assess current treatment needs and provide a prognosis.'" Colon v. Barnhart, 424 F. Supp. 2d 805, 812 (E.D. Pa. 2006) (quoting 66 Fed. Reg. 50746, 50764-65 (2000)). A score of "50 or below indicates serious symptoms, while a GAF score of 51 through 60 indicates moderate symptoms." Rivera, 9 F. Supp. 3d. at 504 (citing DSM-IV at 32, 34).

In recent years, however, the GAF scale has "fallen somewhat into disfavor," as the American Psychiatric Association abandoned the GAF scale in the most recent edition of the DSM ("DSM-V"). Kroh v. Colvin, No. 13-1533, 2014 WL 4384675, at *17 (M.D. Pa. Sept. 4, 2014). As a result of the DSM-V, the SSA issued an Administrative Message ("AM") in July 2013, instructing ALJs "on how to consider Global Assessment of Functioning (GAF) ratings when assessing disability claims involving mental disorders." AM-13066 (July 22, 2013). Critically, the AM notes that even though the DSM-V eliminated the GAF scale, the SSA "will continue to receive and consider GAF in medical evidence." Id. Specifically, "a GAF rating is a medical opinion as defined in 20 CFR §§ 404.1527(a)(2) and 416.927(a)(2).[2] An adjudicator considers a GAF score with all of

---

[2] Medical opinions are defined as "statements from physicians and psychologists or other acceptable medical sources

the relevant evidence in the case file . . . ." Id. Accordingly, the Court looks to the general guidelines concerning the evaluation of opinion evidence to determine how GAF scores should be considered by an ALJ.

Opinions from treating sources are generally given more weight than opinions from other sources. 20 C.F.R. § 416.927(c)(2). In fact, so long as a treating source's opinion is "well-supported" and "not inconsistent with the other substantial evidence," it is given "controlling weight." Id. Either way, an ALJ is to "give good reasons . . . for the weight" she gives to a treating source's opinion. Id. The AM reiterates this standard and specifically applies it to GAF scores, instructing ALJs that "[w]hen case evidence includes a GAF from a treating source and you do not give it controlling weight, you must provide good reasons in the personalized disability explanation or decision notice." AM-13066. In short, an ALJ must "evaluate adequately all relevant evidence," including GAF scores, and "explain the basis of his conclusions." Fargnoli, 247 F.3d at 40.

---

that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

This standard does not, as Plaintiff urges, create or imply a bright-line rule that a case must be remanded if the ALJ failed to address any GAF scores. There was no such rule before the DSM-V eliminated the GAF scale, see Packard v. Astrue, No. 11-7323, 2012 WL 4717890, at *2-3 (E.D. Pa. Oct. 4, 2012) (reviewing cases and summarizing the pre-DSM-V law on GAF scores), and there is still no such rule today. That is, a GAF score does not trigger any unique requirements for the ALJ to fulfill; the failure to invoke the number itself does not require remand. Rather, the question is whether the ALJ "conduct[ed] a thorough analysis of the medical evidence regarding plaintiff's mental impairments," Rivera v. Astrue, 9 F. Supp. 3d 495, 506-07 (E.D. Pa. 2014), such that the ALJ properly "addressed the issues on which plaintiff's GAF scores were based," Lee v. Colvin, No. 11-4641, 2014 WL 2586935, at *2 (E.D. Pa. June 10, 2014). In other words, even if the ALJ did not specifically mention an actual GAF number, she has provided "good reasons" for discounting the GAF score if she adequately explained why she discounted the whole of the source's opinion.

In this case, Plaintiff has received at least two different GAF scores from three doctors. First, on December 5, 2010, Dr. Ely Sapol gave Plaintiff a GAF score of 57, indicating moderate symptoms. R. 352. The ALJ noted this score in her decision denying benefits. R. 19 ("She was also assigned a

Global Assessment of Functioning (GAF) score of 57, indicating only moderate difficulty in functioning." (citation omitted)). Shortly thereafter, on December 28, 2010,[3] Dr. Carol Henderson – Plaintiff's primary care provider (a treating source) – gave Plaintiff a GAF score of 45. R. 359. Dr. David Frankel – Plaintiff's treating psychiatrist – also gave Plaintiff a score of 45 at some point in mid-2011 and repeated it in treatment notes through mid-2012.[4] R. 508, 505, 502, 500, 497, 495,[5] 493,

---

[3] The date is possibly December 8, 2010; the digits are unclear. R. 359.

[4] The origin of Dr. Frankel's repeated GAF score of 45 is somewhat unclear. Each iteration of the score in Dr. Frankel's treatment notes appears in a section labeled "Diagnosis." The Diagnosis section is identical in each form, always including the same "Date Created" (06/06/2011), as well as Plaintiff's diagnosed disorders, medical conditions, stressors, and GAF score of 45 (which is always labeled as the "Current" score). Accordingly, Defendant asserts that this score was created on June 6, 2011, and simply repeated throughout Dr. Frankel's treatment notes. Def.'s Resp. 5, ECF No. 9. But Dr. Frankel's notes from June 6, 2011, do not actually mention a GAF score at any point. See R. 513-16. Rather, Dr. Frankel's assessment of 45 first appears in his notes from July 7, 2011, where it appears in the Diagnosis section (06/06/2011 creation date and all).

At any rate, it is clear that Dr. Frankel at some point gave Plaintiff a GAF score of 45, and did not change that score during a dozen subsequent appointments over the course of a year. To state either that Dr. Frankel independently affirmed that score during each visit or that the score was simply copied and pasted from one visit to the next would be nothing more than speculation.

[5] This particular score appeared on a treatment form filled out by Tennille Chambers, M.A., identified as an "intake assessor/therapist" at Community Council Health Systems, where Dr. Frankel also works. R. 496. Like the Dr. Frankel scores,

492, 489, 487, 485, 482. The ALJ did not discuss these scores of 45 at any time, which Plaintiff contends is error. The question, then, is whether the ALJ adequately discussed the opinions in which the scores of 45 appeared.

The ALJ said the following about Dr. Henderson's and Dr. Frankel's opinions:

> The record also contains multiple Department of Public Welfare employability assessment forms. . . . On September 16, 2010, the claimant's primary care physician Carol Henderson, D.O. determined that the claimant was temporarily disabled from September 16, 2010 until September 17, 2011 because of chronic and daily cephalgia, status post multiple fractures of her left foot, anxiety and depression. One year later on June 7, 2012, Dr. Henderson opined that the claimant is permanently disabled due to morbid obesity, chronic low back pain syndrome, bipolar, and osteoarthritis at multiple sites. On June 29, 2012, the claimant's psychiatrist David Frankel, M.D., expressed that the claimant was temporarily disabled from June 29, 2012 until June 29, 2013 due to major depressive disorder. These opinions are given little weight, as they are quite conclusory, providing very little explanation of the evidence relied on in forming such opinions and are inconsistent with the objective medical evidence of record. Specifically, with regard to the physical issues a consultative examination was grossly normal. Additionally, all diagnostic testing has been unremarkable and she reported that she recently lost twenty-five pounds. She has also been cleared for bariatric surgery. Concerning her mental health issues, during her most recent therapy session with her psychiatrist she reported that she had no psychiatric symptoms, was having no problems, and felt that her medication regimen was working. Furthermore, the decision on an individual's ultimate ability to

---

this score appears within the same repeated Diagnosis section. R. 495.

> work for purposes of disability benefits or supplemental security income is an issue reserved to the Commissioner. For these reasons, the employability assessment forms are given little weight.

R. 22 (citations omitted).

Upon first glance, it appears that this explanation offers "good reasons" that the ALJ rejected these doctors' opinions. Critically, however, this discussion evaluates only a narrow slice of the doctors' medical opinions – and not a slice containing the GAF scores. The ALJ did not even reference the forms on which Dr. Henderson and Dr. Frankel assessed Plaintiff with a GAF score of 45. Indeed, the "employability assessment forms" that the ALJ discusses are different forms entirely, filled out on different dates than the forms containing the GAF scores.[6] The ALJ gave no indication that she took into account the parts of Dr. Henderson's and Dr. Frankel's opinions that were not included on the employability assessment forms. As is, the ALJ's decision gives the impression that Dr. Henderson and Dr. Frankel produced only these particular forms during their treatment of Plaintiff, which is not the case.[7]

---

[6] Dr. Henderson's GAF score, in particular, came several months after she filled out the employability assessment form. The Court has no way to know whether the ALJ considered the possibility that Dr. Henderson changed her assessment of Plaintiff in the intervening time.

[7] If this were the case, and the GAF scores appeared on the employability assessment forms and nowhere else, then the ALJ's explanation would likely be sufficient.

On this record, the Court cannot know whether the ALJ considered the GAF scores of 45 and dismissed them for the same reasons she dismissed Dr. Henderson's and Dr. Frankel's employability assessment forms, or whether she simply missed or ignored those parts of the doctors' opinions. See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("[W]e need from the ALJ . . . some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."); Rivera, 9 F. Supp. 3d at 502 ("[The ALJ] must explain the evidence supporting his findings and the reasons for discounting the evidence he rejects. Otherwise, the reviewing court cannot determine whether significant probative evidence was improperly rejected or ignored."); see also Irizarry v. Barnhart, 233 F. App'x 189, 192 (3d Cir. 2007) (nonprecedential) (remanding where an ALJ not only failed to mention GAF scores, but also "omit[ted] any discussion of" the medical opinions containing those scores). Therefore, the ALJ failed to provide good reasons for her rejection of Plaintiff's GAF scores of 45, and remand is required.

## V. CONCLUSION

For the foregoing reasons, the Court will remand to the ALJ for additional explanation or consideration of Plaintiff's GAF scores.